```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF OKLAHOMA
```

| | |
|---|---|
| ARVEST BANK, )<br>)<br>    Plaintiff, )<br>) | |
| v. ) | Case No. CIV-07-417-FHS |
| )<br>LEWIS RILL, )<br>)<br>    Defendant, )<br>)<br>and )<br>)<br>LEWIS RILL, individually, and )<br>d/b/a Rill Construction Company )<br>and Rill Cattle Company, )<br>)<br>    Third-Party Plaintiff, )<br>)<br>v. )<br>)<br>ARVEST BANK GROUP, INC. and )<br>ARVEST HOLDINGS, INC., )<br>)<br>    Third-Party Defendants. ) | |

**OPINION AND ORDER**

    Before the Court for its consideration is the Motion to Dismiss Counterclaims and Third-Party Complaint (Docket No. 30) filed by Plaintiff, Arvest Bank ("Arvest Bank"), and Third-Party Defendants, Arvest Bank Group, Inc. ("ABG"), and Arvest Holdings, Inc. ("AHI"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  Arvest, ABG, and AHI seek the dismissal of all claims asserted against them by Defendant and Third-Party Plaintiff, Lewis Rill ("Rill"), in Rill's Counterclaim and Third-Party Complaint

(Docket No. 18)[1].  The following counterclaims and third-party claims are the subject of this Motion to Dismiss: (1) respondeat superior liability for violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (2) negligence; (3) actual fraud; (4) constructive fraud; (5) violation of the Oklahoma Consumer Protection Act, 15 O.S. § 751 *et seq.*; (6) intentional infliction of emotional distress; (7) outrageous conduct; (8) undue influence; (9) conversion; (10) breach of contract; and (11) libel and slander, and damage to credit.  For the reasons stated below, the Court finds that the Motion to Dismiss Counterclaims and Third-Party Complaint (Docket No. 30) should be granted in part and denied in part.

I.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a party asserting a counterclaim or third-party claim must present in his pleading "a short and plain statement of the claim showing that [he] is entitled to relief."  For purposes of reviewing the instant motion to dismiss, the Court is required to take all factual allegations of Rill's counterclaims and third-party claims as true and to draw all reasonable inferences in his favor.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Ridge at Red Hawk L.L.C. v. Scheider, 493 F.3d 1174, 1177 (10th Cir. 2007)(on review of a motion to dismiss counterclaims and third-party claims, the Court "assumes the truth of [defendant's] well-pleaded factual allegations and views them in the light most favorable to the [defendant]").

For years, the Court's analysis of a Rule 12(b)(6) motion has

---

[1] As Third-Party Plaintiff, Rill brings his claims individually and d/b/a Rill Construction Company and Rill Cattle Company.

been guided by the standard that dismissal was appropriate only where "it appears beyond a doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Recently, however, in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court held that this "standard has earned its retirement," id. at 1969, and it set forth "a new inquiry . . . to be used in reviewing a dismissal: whether the [counterclaim/third-party claim] contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, 493 F.3d at 1177 (quoting Twombly, 127 S.Ct. at 1974). As noted by the Tenth Circuit, this new standard "seeks to find a middle ground between 'heightened fact pleading,' which is expressly rejected . . . and allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the [Supreme] Court stated 'will not do.'" Robbins v. State of Oklahoma, et al., 2008 WL 747132, at *2 (10th Cir. March 21, 2008) (citations to Twombly omitted). While detailed factual allegations are not necessary, the assertion of "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965; see also LeBlanc v. Michigan, 2007 WL 2225860, at *2 (E.D. Mich. Aug. 1, 2007)(application of Twombly to case involving RICO). Thus, in order survive a Rule 12(b)(6) motion, Rill is required to "nudge[] [his] claims across the line from conceivable to plausible." Twombly, 127 S.Ct. at 1974.

II.

At the heart of this action is a scheme to defraud perpetrated by Jim Woodrow "Woody" Eubanks, the President of the Arvest Bank branch in Stilwell, Oklahoma. During the course of Eubanks' tenure

3

as President of the Stilwell branch, Rill was a banking customer with Arvest.  Rill alleges in his Counterclaims and Third-Party Complaint that from 2003 to 2006 Eubanks conducted an elaborate scheme of mail, wire, and bank fraud to defraud Rill and others of various sums of money.  As part of this scheme, it is alleged that on December 26, 2003, and February 10, 2004, Eubanks created false loan documents in Rill's name and diverted funds from those loans to his own personal use.  Rill further alleges that Eubanks defrauded him on January 8, 2004, when Eubanks stole the proceeds of a Stilwell Livestock Auction check which Rill had endorsed and given to Eubanks with instructions to apply to outstanding loan balances.  It is alleged that Eubanks used his position as the "Autonomous President" of Arvest to perpetrate this fraud upon Rill.  Eubanks was terminated from his employment with Arvest on June 16, 2004.

On July 12, 2006, Eubanks was indicted in the United States District Court for the Eastern District of Oklahoma on twelve counts of bank fraud against Arvest and two other banks.  On October 24, 2006, Eubanks pled guilty to three counts of bank fraud.  On March 16, 2007, Eubanks was sentenced by the Honorable Ronald White to forty-one months in federal prison and to repay Arvest and Armstrong Bank in Stilwell a combined amount of nearly $300,000.  The diversion of loan proceeds in Rill's name was not the subject of Eubanks' federal prosecution nor was it considered as relevant conduct for purposes of Eubanks' sentencing.

Following Eubanks' criminal prosecution, Arvest contacted Rill in the summer of 2007 to inform him that it was reviewing Eubanks' conduct with respect to the December 26, 2003, and February 10, 2004, loans taken out in Rill's name.  During the course of this review, Rill was provided with all the banking records he

4

requested.  On October 3, 2007, Arvest paid Rill $61,599.12, an amount Arvest contends represents "the entire original amount borrowed for the two loans, less the amounts credited to Rill's checking account (that was not diverted by Eubanks), the interest Rill paid on the loans, the interest Rill paid since refinancing the loans, as well as a time value of money factor for the sums Rill disbursed."  Complaint at ¶ 21.  Rill contends this amount is not sufficient to cover the damages inflicted on him by Eubanks' actions as Arvest's "Autonomous President."  Rill has made a demand on Arvest for an amount in excess of $3,000,000 for Arvest's alleged RICO violations and breach of contract, along with various other state law claims.  Arvest initiated this action by filing its Complaint wherein it seeks a declaration that it is not liable to Rill under RICO and that it has no breach of contract liability to Rill.  Rill thereafter filed his Counterclaim and Third-Party Complaint.

III.

Invoking the doctrine of respondeat superior, Rill attempts to hold Arvest, ABG, and AHI liable for Eubanks' asserted violation of RICO, 18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

A section 1962(c) claim requires proof of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L v. Imex Co., 473 U.S. 479,

5

496 (1985)(footnote omitted).

Rill alleges that Arvest, AGB, and AHI are all vicariously liable for Eubanks' racketeering acts because such acts were committed within the scope of his employment with Arvest, AGB, and AHI, and in furtherance of their business. Rill also alleges Arvest acquiesced in Eubanks' racketeering activities by retaining money that was taken from Rill as a result such activities. This Court rejects Rill's attempt to impose vicarious RICO liability on Arvest, AGB, and AHI for several reasons. First, as to AGB and AHI, these two entities cannot be liable under the doctrine of *respondeat superior* given their status as parent corporations of Arvest. In his Counterclaim and Third-Party Complaint, Rill acknowledges and asserts that "Arvest is a wholly owned subsidiary of AHI, and AHI is a wholly owned subsidiary of ABG." Counterclaim and Third-Party Complaint at ¶ 47. Rill asserts that Eubanks was an employee of Arvest. Id. at ¶¶ 35, 55, 5, and 57. Thus, as mere parent corporations, AGB and AHI cannot be held liable based on the parent-subsidiary relationship with Arvest absent some allegation that they were the perpetrators of the alleged racketeering activity. See Brannon v. Boatmen's First National Bank of Oklahoma, 153 F.3d 1144, 1150 (10th Cir. 1998). No such allegations exist in the Third-Party Complaint; consequently, RICO liability may not be imposed against AGB and AHI.

Second, although the Tenth Circuit has not directly addressed the issue of whether an employer can be held vicariously liable under RICO, this Court finds the more well-reasoned view to be that vicarious liability is at odds with the intent and purpose of RICO. As noted by the Seventh Circuit:

> *Respondeat superior's* premise is liability without fault,

6

> a concept inconsistent with the language of § 1962(c) as interpreted by this court. Imposing vicarious liability would defeat the purpose of RICO, "which, after all, is to reach those who ultimately profit from racketeering, not those who are victimized by it."

D & S Auto Parts, Inc. v. Schwartz, 838 F.2d 964, 967 (7th Cir. 1988)(quoting Haroco v. American National Bank & Trust Co. of Chicago, 747 F.2d 384, 402 (7th Cir. 1984)). An employer who is not an active participant in the scheme to defraud cannot be held accountable for its employees' racketeering activities because "the statute [section 1962(c)] is designed to impose liability upon a corporation which is a perpetrator of illegal activity . . . not upon an unwitting conduit of its employees' RICO violations." Schwartz, 838 F.2d at 967 (citing Haroco, 747 F.2d at 401).

The facts of Schwartz are instructive. D & S Auto Parts ("D & S") was a retail auto parts dealer which purchased wholesale auto parts from defendant, A.P. Walter Company, Inc. ("Walter"). Bernard Saul ("Saul") was the salesperson for Walter assigned to the D & S account. Each week, Saul would take inventory at the D & S warehouse and phone in the order to Walter. After delivery of the parts, Walter mailed invoices to D & S which D & S paid upon receipt. D & S eventually discovered that for a nearly six-year period it had paid $155,445.20 for parts it had not ordered or received due to a scheme devised by Saul where he took parts from the Walter warehouse and billed D & S for the parts, but sold and delivered the parts to third parties. D & S brought suit against Walter under section 1962(c) based on vicarious liability for the illegal acts of Saul. The Seventh Circuit in Schwartz held that Walter, the corporate defendant and employer, was not vicariously liable under the doctrine of *respondeat superior* for the fraudulent acts of its employee, Saul, notwithstanding the fact that Walter was an unwitting beneficiary of Saul's fraud in that it received

7

some payments from D & S for parts never delivered.  In doing so, the Seventh Circuit reasoned that because the premise of *respondeat superior* is liability without fault, that premise is inconsistent with the language of section 1962(c) as interpreted in Haroco, i.e., the corporate enterprise must be the perpetrator or central figure in the criminal scheme.

The facts herein parallel those in Schwartz.  Here, there is no allegation that Arvest was a perpetrator of any of the alleged criminal conduct by Eubanks.  Absent specific factual detail of participation, the claim that Arvest "facilitated" Eubanks' acts by virtue of Eubanks' employment status with Arvest is the equivalent of Arvest being an unwitting conduit for Eubanks' RICO violations.  Rill has not alleged that Arvest was a perpetrator of any illegal RICO activity; rather, the allegations in the counterclaims and third-party claims are only that Eubanks' employment with Arvest facilitated his alleged fraudulent scheme.  In fact, Arvest's role as a victim, as opposed to a perpetrator of the fraudulent activities, is asserted by Rill himself in his counterclaims and third-party claim wherein he asserts that "Eubanks illegally stole money from Arvest and caused Rill to assume fraudulent loans and pay interest and related over-draft fees thereon."  Counterclaims and Third-Part Complaint at ¶ 112.  Moreover, the fact that Arvest unwittingly received payments from Rill on the fraudulent loans secured by Eubanks does not make Arvest a perpetrator of the criminal conduct – it is no different than Walter, the employer in Schwartz, unwittingly receiving payment from D & S on parts not ordered by D & S.  As aptly stated by Arvest in seeking dismissal, "[b]oth cases involved single bad-actors that perpetrated their scheme without any knowledge by their employers."  Document No. 30 at p. 8.  Given Rill's allegations contained in his counterclaims and third-party claims, this Court finds Arvest cannot be liable as

a matter of law for the RICO violations of Eubanks under the doctrine of *respondeat superior*.

Finally, the imposition of vicarious liability against Arvest is inappropriate because Rill's factual allegations concerning Eubanks' scheme to defraud point to Arvest being both the RICO "person" and the "enterprise" used to perpetuate the scheme. Given these allegations, section 1962(c) liability cannot be imposed on Arvest. It is clearly established law in the Tenth Circuit "that for purposes of 18 U.S.C. § 1962(c), the defendant 'person' must be an entity distinct from the alleged 'enterprise.'" Brannon, 153 F.3d at 1146 and Garbade, 831 F.2d at 213. Rill attempts to circumvent this well-established rule by claiming he, as opposed to Arvest, is the "enterprise" for purposes of his section 1962(c) claim. This Court disagrees. Having thoroughly reviewed all thirty-nine pages of Rill's Counterclaim and Third-Party Complaint[2], this Court concludes Rill has failed to satisfy the "plausibility" standard of Twombly with respect to the distinctiveness of the "person" and "enterprise." The detailed factual allegations contained in paragraphs 60 through 124 of the Counterclaim and Third-Party Complaint undeniably point to Arvest as the true "enterprise" in connection with Eubanks' scheme to defraud. The fact that Rill may have affected Rill's financial affairs through the diversion of funds, the consolidating of loans, the entering into loans, and the depositing of funds is not an indication that Rill was the "enterprise" through which Eubanks operated, but rather, these activities merely reflect the reality that Rill was defrauded out of funds by Eubanks through his use of

---

[2] Document No. 18 is a 46-page document and includes Rill's Answer to Arvest's Complaint. The first six pages cover Rill's Answer. The remaining pages cover the Counterclaim and Third-Party Complaint.

9

Arvest to facilitate his illegal activities. Rill's use of conclusory allegations and labels to the effect that he was the "enterprise" are not sufficient to "nudge[] [his] claims across the line from conceivable to plausible" as required under Twombly. Consequently, Rill has failed to sufficiently plead the existence of an "enterprise" distinct from a "person" under section 1962(c), and his RICO claim is subject to dismissal for failure to state a claim upon which relief can be granted.[3]

IV.

Arvest, AGB, AHI have also moved to dismiss all state law claims asserted against them by Rill pursuant to Rule 12(b)(6) on the basis that Rill has failed to state a claim upon which relief can be granted. As to AGB and AHI, this Court concludes dismissal is appropriate for the reason that Rill's pleading is wholly devoid of any allegations against AGB and AHI, as opposed to Arvest. As earlier noted, Rill acknowledges and asserts that "Arvest is a wholly owned subsidiary of AHI, and AHI is a wholly owned subsidiary of ABG." Counterclaim and Third-Party Complaint at ¶ 47. Absent any allegations of conduct implicating AGB and AHI, their mere status as parent corporations is insufficient to impose

---

[3] Rill also asserts two other "enterprises" in his Counterclaim and Third-Party Complaint. In paragraph 127, Rill asserts a Eubanks, Jennifer Johnson (Arvest employee), and Ted Sheets (Arvest employee) "enterprise." This "enterprise" likewise fails to state a claim for section 1962(c) liability as it conflicts with the distinctiveness principle requiring the "person" to be an entity distinct from the "enterprise." Brannon, 153 F.3d at 1146 and Garbade, 831 F.2d at 213. Rill's other "enterprise" listed in paragraph 128 consists of Eubanks and Bobby Green, d/b/a B & J Cattle Company. This additional "enterprise" fails as no factual allegations support this "enterprise" and conclusory allegations or labels are insufficient under Twombly.

liability on them for the various state law claims asserted by Rill. See Key v. Liquid Energy Corp., 906 F.2d 500, 503 (10th Cir. 1990)(in order to impose liability on parent corporation for acts of subsidiary, it must be alleged and shown that subsidiary was mere instrumentality or alter ego of parent and/or that use of separate corporate structures resulted in fraud, illegality, or inequity). Consequently, consistent with this Court's ruling above on the RICO claim, this Court finds that Rill has likewise failed to state a claim against AGB and AHI with respect to all state law claims asserted in his Third-Party Complaint.

Turning to Arvest, this Court has throughly reviewed the various arguments made by Arvest with respect to the individual state law claims and finds, with the exception of Rill's conversion and libel and slander claims, that Rill's pleading satisfies the "plausibility" standard under Twombly as to Rill's claims for negligence, violation of the Oklahoma Consumer Protection Act, 15 O.S. § 751 *et seq.*, intentional infliction of emotional distress, outrageous conduct[4], undue influence, and damage to credit, and the "particularity" requirement under Fed.R.Civ.P. 9(b) as to Rill's fraud claims. In particular, this Court notes that the issues raised by the parties in connection with the state law claims including, but not limited to, scope of employment, the "discovery rule," and ratification are not capable of resolution by way of the instant Rule 12(b)(6) motion, but rather, must await the development of a factual record. Consequently, dismissal is not appropriate as to Rill's claims against Arvest for fraud,

---

[4] This Court is not aware of any separate tort under Oklahoma law for "outrageous conduct." Unless otherwise informed by Rill, this Court will treat the claim of "outrageous conduct" as subsumed within the recognized tort of intentional infliction of severe emotional distress.

11

constructive fraud, negligence, violation of the Oklahoma Consumer Protection Act, 15 O.S. § 751 *et seq.*, intentional infliction of emotional distress, outrageous conduct, undue influence, and damage to credit.

Arvest has moved to dismiss Rill's conversion counterclaim on the basis that Rill has failed to plead the essential elements of a conversion claim because only a right to recover money has been asserted, i.e., a breach of contract action, and not the wrongful dominion over goods or tangible personal property. Under Oklahoma law, "[c]onversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." Welty v. Martinaire of Oklahoma, Inc., 867 P.2d 1273, 1275 (Okla. 1994). Generally, only tangible personal property may be converted; consequently, a tort action for conversion may not be maintained to satisfy a debt owing by virtue of contract. See Shebester v. Triple Crown Insurers, 826 P.2d 603, 608 (Okla. 1992) and Steenbergen v. First Fed. Sav. & Loan, 753 P.2d 1330, 1332 (Okla. 1987). Here, Rill has merely plead an action to recover a debt, not the conversion of any personal property. As a result, Rill's counterclaim for conversion against Arvest is subject to dismissal.

Finally, Arvest seeks the dismissal of Rill's slander and libel counterclaim by arguing, among other reasons, that there has been no publication of any writing to constitute a libel claim. In response, Rill contends that Arvest charged him with "over 900 overdraft charges because of fraud by the bank . . . [and] [t]he act of returning checks is a publication that attacks Rill's ability to conduct business." Rill Response Brief (Document No. 34

at p. 32).[5] Rill does not contend in his response nor does he allege in his counterclaim, however, that the overdrafts charges were published to any third person. An actionable libel claim under Oklahoma law requires publication to a third person. See Okla.Stat.tit. 12, §1441 and Tanique v. State ex rel. Oklahoma Bureau of Narcotics and Dangerous Drugs, 99 P.3d 1209, 1217 (Okla.Ct.App. 2004)(elements of defamation claim, either libel or slander, require unprivileged publication to a third party). Thus, the overdraft charges incurred by Rill do not, standing alone, constitute a publication for purposes of Oklahoma libel law.

V.

Based on the foregoing reasons, the Motion to Dismiss Counterclaims and Third-Party Complaint (Docket No. 30) filed by Arvest, AGB, and AHI is granted in all respects as to Rill's third-party claims against AGB and AHI. The Motion to Dismiss Counterclaims and Third-Party Complaint (Docket No. 30) is granted as to Arvest with respect to Rill's counterclaims for violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), conversion, and libel and slander. In all other respects, the Motion to Dismiss Counterclaims and Third-Party Complaint (Docket No. 30) is denied as to Rill's counterclaims against Arvest.

---

[5] Rill's response is limited to an argument for a libel claim based on the 900 plus overdrafts. No argument in support of a separate slander claim is made nor is there any argument for a libel claim based on any other writing.

It is so ordered this 14th day of April, 2008.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma